

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| **BOBBY WOFFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **05-PWG-0304-M** |
| | ) | |
| **FARMERS TELEPHONE** | ) | |
| **COOPERATIVE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

| | | |
|---|---|---|
| **MACK McCOLLUM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **06-PWG-872-M** |
| | ) | |
| **FARMERS** | ) | |
| **TELECOMMUNICATIONS** | ) | |
| **COOPERATIVE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF DECISION**

There are two pending motions for summary judgment.  First is the July 9, 2008 motion

(Doc. # 60) of defendant Farmers Telecommunications Cooperative Inc. (hereinafter "FTC").

Second is the August 1, 2008 cross-motion (Doc. #65) for summary judgment filed by plaintiffs

Mack McCollum and Bobby Wofford.   In light of the court's orders of July 11, 2008 and August

5, 2008 (Docs. #63 & 67), the motions are now under submission.  Having considered the briefs and

evidentiary submissions, the court finds that FTC's motion is due to be granted for the reasons

outlined below.   The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2.

## I.   <u>Procedural History</u>

On January 11, 2005, Plaintiff Bobby Wofford filed a complaint in the Circuit Court of Dekalb County, Alabama, which contained a single count alleging a "breach of contract."  (Notice of Removal, Doc. #1, Ex. A.)  On February 9, 2009, FTC filed a Notice of Removal, arguing that this court had original jurisdiction over Wofford's complaint under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*  After the court denied Wofford's motion to remand, he amended his complaint and recast his claims as under sections 1132(a)(1)-(3) of ERISA.  (Am. Compl. & 2nd Am. Compl., Docs. #15 & 18.)

On May 5, 2006, Plaintiff Mack McCollum filed a complaint in federal court alleging violations of ERISA.  (Compl., Doc. #1 in 4:06-cv-872-PWG.)  McCollum's complaint duplicated Wofford's claims, but asserted a separate misrepresentation claim.  (*Id.*)  McCollum has since informally dismissed his misrepresentation claim on June 5, 2008, and does not pursue it here.

Pursuant to a motion filed by both Wofford and McCollum, the court consolidated the cases on December 14, 2007.  The complaints assert that Plaintiffs Wofford and McCollum were retired trustees of  FTC and contend that FTC violated ERISA when it terminated the health insurance benefits of Plaintiffs which FTC allegedly obligated itself to pay for the life of each Plaintiff.

Both Motions for Summary Judgment (Docs. #60 & 65) assert that no genuine issue of material fact exists and that each is entitled to judgment as a matter of law.   The parties have filed briefs and submitted evidence in support of their respective positions concerning the pending

motions for summary judgment.  Defendant submitted a brief (Doc. # 61) and evidence[1] (Doc. # 62) in support of its own motion for summary judgment on July 9, 2008.  On August 1, 2008, Plaintiffs filed a brief (Doc. # 65) and evidence[2] (Doc. # 66) in opposition to defendant's motion for summary judgment.  The document containing Plaintiffs' brief also included plaintiffs' cross motion for summary judgment. On August 18, 2008, Defendant filed a brief (Doc. # 68) in reply to plaintiff's opposition.  Although this document was also entitled "Motion to Strike Plaintiffs' Cross Motion for Summary Judgment," Defendant filed a separate motion to strike (Doc. # 69) that same day, along with evidence[3] (Doc. #70) in support of the motion to strike.  On August 29, 2008, Plaintiffs filed a response (Doc. #71) to the motion to strike, and two days later filed a response (Doc. #72) to Defendant's reply brief and motion to strike.

Before addressing the cross motions, the court considers FTC's motion to strike.  The motion (doc. #69) to strike is **DENIED**.  Although Plaintiffs' motion for summary judgment was filed outside of the time prescribed by the court, and without leave of court, FTC is not prejudiced by the late filing.  FTC had adequate opportunity to address the issues presented by the Plaintiffs, which were primarily a re-examination of the issues and arguments presented by FTC.

---

[1]   The defendant submitted the following evidence in support of its motion for summary judgment: deposition of Bobby Wofford with exhibits; deposition of Mack McCollum and exhibits; deposition of Fred Johnson and exhibits; 2000 FTC bylaws; and excerpts from R. Tumlin's deposition and exhibit 4 to his deposition.

[2]   The plaintiff submitted the following evidence: deposition of Bobby Wofford and exhibits; deposition fo Mack McCollum and exhibits; deposition of Fred Johnson and exhibits; 2000 FTC bylaws; excerpts from R. Tumlin's deposition and exhibit 4 from his deposition; FTC's responses to plaintiffs' supplemental discovery; excerpts from deposition of Gary Blevins; excerpts from deposition of Danny Richey; excerpts from deposition of Dennis Ashley; additional excerpts from R. Tumlin's deposition' excerpts from R. McGee's deposition.

[3]   Defendant filed the following evidence in support of its motion to strike: excerpts from G. Blevins deposition; excerpts from R. Tumlin's deposition; and excerpts from D. Richey's deposition.

## II.   Legal Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)

4

(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  *See Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  *See Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest

on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

"The Rule 56 standard is not affected by the filing of cross-motions for summary judgment, and each motion must be examined independently in order to determine whether either party is entitled to an entry of judgment. *Sierra Club, Inc. v. Leavitt*, 393 F. Supp. 2d 1263, 1268 (N.D. Fla. 2005). Indeed, the Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Of particular importance to the disposition of the current motions is the unequivocal admonition that a court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (citing *Carlin Communications, Inc. v. Southern Bell Telephone and Telegraph*, 802 F.2d 1352, 1356 (11th Cir. 1986). "In reviewing whether the non-moving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Tipton v. Bergrohr GMBH-Siegen,* 965 F.2d 994, 999 (11th Cir. 1992). "Summary judgment is justified only for those cases devoid of <u>any</u> need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (emphasis added). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts. *Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368 (11th Cir. 1982); *Lighting Fixture & Electrical Supply Company v. Continental Insurance*

*Co.,* 420 F.2d 1211, 1213 (5th Cir. 1969).  If reasonable minds might differ on the inferences arising

from undisputed facts, then court should deny summary judgment.  *Clemons*, 684 F.2d at 1369;

*Impossible Electronics Techniques, Inc.*, 669 F.2d at 1026.  See also *Coleman v. Lazy Days RV*

*Center, Inc.*, 2007 WL 2021832 (M.D. Fla. 2007) (citing *Warrior Tombigbee Transportation*

*Company, Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

Cross-motions for summary judgment may be predicated upon evidence identical to that to

be presented to the ultimate factfinder and nonetheless, each motion is properly denied if the finder

of fact is required to determine either a disputed fact or the appropriate inferences to be drawn from

facts that are not wholly disputed.  See e.g., *Quantachrome Corporation v. Micromeritics Instrument*

*Corporation*, 230 F. Supp. 2d 1309, 1310 (2002) (denying cross-motions for summary judgment and

scheduling a non-jury trial on discrete issues).

**III.    Relevant Undisputed Facts**[4]

**A.  Introduction**

This action evolved from changes to the group health benefits plan of FTC, as applied to

retired members of the Board of Trustees.  Before the retirement of Plaintiffs from the Board,[5] FTC's

group health benefits plan provided retirement coverage at FTC's expense for trustees who retired

after four (4) years of service.  After Plaintiffs retired, however, the Board amended the plan to make

retirement coverage eligible for retired trustees who had at least ten (10) years of service and were

---

[4]/      If the facts are in dispute, the dispute is noted and stated in a manner most favor to the non-movant.  *See*
*Fitzpatrick*, 2 F.3d at 1115.  The court notes that these are the facts for summary judgment purposes only.  They
may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.
1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary
judgment motion [ ] may not be the actual facts'") (citation omitted).

[5]/      Both Plaintiffs served on FTC's Board of Trustees from 1996 through 2001.  (Wofford Dep. at 12.)

at least fifty-five (55) years of age.  As a result of the change in the plan, the Plaintiffs were no longer eligible for FTC-funded retirement coverage.[6]  This action challenges the change and the resulting loss of benefits.

### B. FTC and its Management Structure

FTC is a rural telecommunications cooperative providing coverage to parts of Jackson County and DeKalb County.  FTC is made up of seven exchange areas - Henagar, Geraldine, Fyffe, Rainsville, Flat Rock, Pisgah, and Bryant. (*See* Johnson Decl.)  The business and affairs of FTC are managed by a board of seven trustees, one from each exchange.  (*Id.*)  In 1998, the FTC trustees were Gary Blevins, Tommy Gilbert, Mack McCollum, Danny Richey, Ed Whitton, Randy White and Bobby Wofford.  (Ex. 5 to Blevins Dep.- 12/8/1998 Meeting Minutes.)  FTC trustees receive no payment for serving as trustees other than a small stipend for attending meetings.  (Johnson Dep. at 55; Tumlin Dep. at 73.)  Under the bylaws, however, trustees are permitted to participate in health insurance offered by FTC to employees. (Tumlin Dep. at 134-35; Johnson Dep. at 26-27.)

The Board  exercise all of the powers of FTC "except such as are by law, the Articles of Incorporation or these Bylaws conferred upon or reserved to the members." (2000 FTC Bylaws at 10.)  Included among those powers is the power to change selection of coverages under its health plan or change the level of benefits offered. (Wofford dep. at 100.)

In 1998, Gerald Lacey was the General Manager of FTC and Fred Johnson was the Manager of Accounting and Finance. (Johnson Dep. at 8.) When Lacey retired in 2002, Fred Johnson became Executive Vice President & General Manager. (Johnson Dep. at 7-8, 23-24.)  The Executive Vice

---

[6]/      Neither had served on the Board of Trustees for 10 years, and Wofford had not reached age 55.

President and General Manager is the chief executive officer of the organization and responsible for the execution of Board policy and the day-to-day operations and management of FTC. (*Id.* at 38.)

### C. FTC's Group Health Benefits Plan

FTC is a member of the National Telephone Cooperative Association ("NTCA"). NTCA offers member organizations the option to participate in certain benefits and programs. One such program is a group health benefits plan. NTCA began providing group health benefits to employees of FTC in the late 1960s or early 1970s. (Johnson Dep. at 26-27.) Through NTCA, and later, Blue Cross, FTC provides health insurance benefits to eligible employees and Trustees who elect to receive such benefits. (Johnson Dep. at 26-27; Exs. 1-3 of Johnson Decl.) Historically, retired employees and retired trustees were eligible for health insurance under the group health plan at their own expense. (Johnson Dep. at 55.)

#### 1. The Change to an FTC- Funded Group Health Plan

On May 12, 1998, the Trustees voted to undertake an actuarial study to consider paying health insurance "based on the following criteria[:] Employees may retire at age 55 or at 60 and Board member with 4 year service who leave the Board for any reason." (Pl. Ex. 3 - 5/12/98 Meeting Minutes.) Johnson conducted or retained a third party to conduct this actuarial study. (McCollum Dep. at 84.) Johnson reported back to the Board that the retirement health insurance coverage could be funded by FTC. (*Id.*)

On July 28, 1998, the Board "unanimously approved to fund the NTCA Insurance Program for both [retired] employees and trustees in accordance with the prior discussion." (Ex. 11 to Johnson Dep. – 7/28/98 Meeting Minutes.) The Board officially approved the change to the group health benefits plan with NTCA on October 15, 1998. (Ex. 12 to Johnson Dep. - 10/15/98 Board

minutes.)  As discussed at the earlier meetings, this change provided for FTC- funded retirement coverage for eligible trustees and employees, and allowed retired trustees to participate in the health coverage under the plan if they had served four (4) years on the Board and no minimum age requirement.  (Johnson Dep. at 179, 256-66.)  Retiring employees, however, were required to have at least ten (10) years of service and had to be at least fifty-five (55) years old.  (Wofford Dep. at 48.)

### 2.  Implementation of the FTC-Funded Plan

The parties view the events to follow in very different ways.  The court separates the versions below to emphasize the nature of the factual dispute.

### a.  *Plaintiffs's Version of Events*

Some time after FTC authorized the change from personally-funded to an FTC-funded retirement health plan, FTC authorized its counsel to retain an outside attorney to provide legal advice and assistance with respect to the approved policy.  (Def. Ex. F - FTC's Resp. to Pls. Supp. Disc. Interrog. No. 1(b).)  Attorney Deb Mackey drafted the policy (hereinafter referred to as the "Mackey policy.").  (*Id.*)  Plaintiffs maintain that the "Mackey policy" provided for lifetime insurance for retired trustees.  (Doc. #65 at ¶ 21.)  Specifically, in pertinent part, the "Mackey policy" provided that the policy could not be "altered, amended or terminated" unless, *inter alia*, (1) the employees' benefits were increased, in which case the trustees' benefits were to be increased equally; (2) the employees benefits were decreased, in which case the trustees' benefits were to be decreased equally; or (3) the employees benefits were terminated, in which case the trustees' benefits were to terminate. (Ex. 16 to McCollum Dep.)

Plaintiffs maintain that the FTC Board adopted the "Mackey policy" at the Board meeting held on December 8, 1998, when the Board unanimously voted to provide insurance for Board

members who retired after four years or more of service on the Board.  (Johnson Dep. at 179; *see*
Doc. #65 at ¶ 20 - Pls. Brief.)  Plaintiffs concede that the Board minutes from the December 8, 1998
meeting do not reflect that the "Mackey policy" was ever presented to the Board, much less voted
on and/or approved.  (Ex. 14 to Johnson Dep. – 12/8/98 Board meeting minutes.)  Plaintiffs contend,
however, that the minutes do not always reflect every word of each meeting, and that there were
occasional "gaps and omissions" in the minutes.  (Blevins Dep. at 19, 91; McCollum Dep. at 55.)
 It is undisputed, however, that the language of the "Mackey policy" is not part of the SPD nor
incorporated by reference.

Instead, Plaintiffs rely upon three pieces of evidence to support their proposition that the
"Mackey policy" was adopted.  First, they contend that the vote to provide insurance for trustees who
retire after four years of service as an implicit adoption of the "Mackey policy." (See Doc. #65 at
¶¶ 20-29.)  Second, plaintiffs note that testimony of the board members highlight that when they
voted on the policy, the members believed they were adopting a policy of lifetime health insurance
benefits from FTC.  (McCollum Dep. at 49-50; Wofford Dep. at 66; McGee Dep. at 60-61; Ashley
Dep. at 45.)   Finally, and most importantly, plaintiffs point to the last sentence of the "Mackey
policy" which reads as follows: "Approved by the Board of Trustees on December 8, 1998."  (Ex.
16 to McCollum Dep.)

### b.  *FTC's Version of Events*

In sharp contrast to Plaintiffs' version, FTC maintains that the "Mackey policy" was never
approved.  FTC insists that the "Mackey policy" was merely a draft document and was not enacted
as an official policy of FTC.  (Doc. #68 at ¶ 2.)  In support of this position, FTC points to multiple

record facts.[7] First, there is nothing in the board minutes which show that the "Mackey policy" was even presented to the Board at the December 8, 1998 meeting (or any other meeting) for consideration. (*See* Exs. 12-14 to Johnson Dep.)  Nor is there any evidence in the record that a vote was taken to approve the policy. (*See* Ex. 14 to Johnson Dep. – 12/8/98 Board meeting minutes.) Several board members testified that every vote taken by the Board is recorded in the minutes. (Blevins Dep. at 22-31; Richey Dep. at 80-81; Tumlin Dep. at 142-43.)  Second, both Plaintiffs and board member Richey testified that they could not recall ever seeing the document before the production of it by FTC during discovery in this case. (Wofford Dep. at 70, 113; McCollum Dep. at 136; Richey Dep. at 35-36.)

Instead, FTC alleges that, at the request of the Board of Trustees of FTC, NTCA drafted a new adoption agreement, implementing the above change to the Plan.  The NTCA summary plan description ("SPD") provided a reservation of rights to alter, amend or terminate this coverage at a later date:

> "[FTC] may change its selection of coverages at any time by executing a new Adoption Agreement. . . . [FTC] may terminate its participation in the [NTCA group benefits plan] by giving the [NTCA group health benefits plan] 30 days written notice."

(Ex. 6 to McCollum Dep. – 1998 NTCA SPD at 54.[8])  The SPD further reserves the right of NTCA to alter, amend or terminate coverage with prior notice. (*Id.*)

---

[7] In its reply brief, FTC "refers the Court to the December 7, 1998 letter by Deb Mackey to Fred Johnson attaching this draft policy that was submitted under seal" for review by the court relating to a discovery matter. Such reference is improper as this letter, although reviewed by the court *in camera*, was not produced by FTC. In fact, FTC moved the court for a protective order to prevent production of the letter, a request that the court granted on March 2, 2006.  It may not now rely upon a document it did not produce as evidence to support its contention that the "Mackey policy" was merely a draft.

[8] This language is identical to the language in the 2002 SPD. (*See* Ex. 6 to Johnson Dep.)

FTC maintains that neither the NTCA plan nor the SPD contain any guarantee or promise of lifetime retirement health coverage. The Adoption Agreement was executed by FTC Board President Randy Wright during the December 8, 1998 Board meeting and took effect on January 1, 1999. (Ex. 1 to Johnson Dep. – Adoption Agreement; Ex. 14 to Johnson Dep. – 12/8/98 Board meeting minutes.)

### D. Retirement of McCollum and Wofford

In 2001, both McCollum and Wofford retired from the Board of Trustees. (McCollum Dep. at 17; Wofford Dep. at 25.) At the time of their retirement, both men had served on the Board for more than four years. (McCollum Dep. at 13; Wofford Dep. at 25.) After their retirement, FTC provided coverage for McCollum and Wofford under the NTCA health plan from 2001 until 2004. (McCollum Dep. at 49, 98; Wofford Dep. at 28.) This coverage was fully-funded by FTC, and there is no dispute that the health insurance coverage was provided as a result of action taken by the Board in 1998.[9] (*Id.*)

### E. The Switch to Blue Cross and Change to Eligibility Requirements for Retired Trustees[10]

In 2004, Johnson recommended that the Board consider terminating the NTCA group health benefits plan and enrolling with Blue Cross due to potential cost savings to FTC. (Johnson Dep. at 241-42.) Upon the Board's direction, Johnson negotiated with Blue Cross, and Blue Cross presented

---

[9]/     Of course, as noted above, the dispute is exactly what "action" the Board took and what policy, if any, was adopted.

[10]/    The change was apparently driven by employee disgruntlement with the policy of "preferential trustee eligibility." (Tumlin Dep. at 33-34; Wofford Dep. at 46-47; McCollum Dep. at 87.) This disgruntlement included Johnson, who admitted "that he was never in favor of a policy that provided preferential treatment to board members compared to benefits offered to employees. (Pls. Ex. F - FTC's Resp. to Pls's Supp. Disc. Interrog. No. 3.)

a proposal to the Board that provided substantial cost-savings to FTC.[11]  (*Id.*)  In February 2004, the

Board voted to terminate coverage with NTCA and enroll with Blue Cross.  (Tumlin Dep. at 45-46.)

The Blue Cross Health Care Plan provides that FTC is the "plan sponsor" and has the right

to amend the plan terms. (Johnson Dep. at 261; Ex. 1 to Johnson Decl.- Blue Cross Health Care plan

at  48.) The Blue Cross Plan gives FTC the discretion to amend the plans terms and provides:

> Farmers Telephone Cooperative is responsible for discharging all
> obligations that ERISA and its regulations impose upon Plan
> Sponsors and Plan Administrators . . . To the extent not delegated to
> Blue Cross, Farmers Telephone Cooperative, as plan sponsor, has the
> discretionary authority to interpret and construe the terms of the plan.
>
> Farmers Telephone Cooperative currently intends to continue the
> Group Health Care Plan as described herein, but reserves the right, in
> its discretion, to amend, reduce or terminate the plan and coverage at
> any time for active employees, retirees, former employees, and all
> dependents.

(Blue Cross Group Health Care Plan at 48.)

In September 2004, the Board voted to amend the post-retirement eligibility for retired

trustees.[12]   (Johnson Dep. at 244-45; Ex. 4 to Tumlin Dep. - 9/21/04 Board Minutes.)  As a result

of the change, retired trustees were eligible for post-retirement benefits if they served on the Board

for ten (10) years and reached the age of fifty-five (55).  (Richey Dep. at 40; Tumlin Dep. at 138.)

After the change to the plan, McCollum and Wofford[13] were no longer eligible for FTC-funded

---

[11]/     Johnson testified that FTC has saved approximately $1,200,000.00 per year by switching to Blue Cross. (Johnson Dep. at 235.)

[12]/     Plaintiffs observe that this vote occurred just one month after the 2004 Board of Trustees election.  (McGee Dep. at 44.)

[13]/     Apparently Gary Blevins's health insurance was also cancelled as a result of this change. (Blevins Dep. at 78.)

retiree health benefits through Blue Cross.  (Def. Ex. 28 to Wofford Dep.; Def. Ex. 18 to McCollum Dep.)

On October 13, 2004 and October 20, 2004, respectively, Johnson wrote a letter to Wofford and McCollum explaining the change in FTC's retirement coverage policy and the rationale. (*Id.)* Mr. Johnson wrote that the Board "wrestled" with the decision "and concluded the prudent decision was to set group health benefits for retired trustees at the same level as for retired employees. Accordingly, this means that only trustees who separate from service on the board after reaching age 55 and having served for ten years will qualify for retiree and/or dependent health benefits." (*Id.*)

## IV.   Applicable Substantive Law and Analysis

As the factual summary above makes abundantly clear, there is a dispute of material fact as to whether the Board of Trustees of FTC adopted the "Mackey policy."  This dispute of material fact ordinarily would result in the denial of both motions for summary judgment.  This case, however, is not the ordinary one; even if the court accepts the facts Plaintiffs present, and FTC expressly denies, FTC is entitled to summary judgment for the reasons outlined below.

### A.  Vesting of Benefits

All parties are in agreement that the plan at issue constitutes a welfare benefit plan under 29 U.S.C. § 1002(1).  The implications of this classification are significant here because it is well-established that ERISA does not prohibit a company from terminating or modifying previously offered benefits that are not vested.  *See Owens v. Storehouse, Inc.*, 984 F.2d 394, 397 (11th Cir.1993); *Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851, 855 (4th Cir.1994), *cert. denied*, 514 U.S. 1057, 115 S. Ct. 1442 (1995); *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 935 (5th Cir.), *cert. denied*, 510 U.S. 870, 114 S. Ct. 196 (1993).  Although ERISA contains strict vesting

requirements for pension plans, it does not require automatic vesting of welfare benefit plans. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S. Ct. 1223, 1228 (1995). "Accordingly, a plan participant's interest in welfare benefits is not automatically vested, and employers have a statutory right to 'amend the terms of the plan or terminate it entirely.'" *Gable*, 35 F.3d at 855 (quoting *Biggers v. Wittek Indus., Inc.*, 4 F.3d 291, 295 (4th Cir. 1993)); *see also Doe v. Group Hospitalization & Medical Servs.*, 3 F.3d 80, 84 (4th Cir.1993); *Wise*, 986 F.2d at 935. Thus, "[a]n employer may unilaterally modify or terminate health benefits 'absent the employer's contractual agreement to the contrary,' even if some benefits have been paid." *John Morrell & Co. v. United Food and Commercial Workers Int'l Union AFL-CIO*, 37 F.3d 1302, 1303-04 (8th Cir.1994) (citations omitted).

Nevertheless, in certain situations, a welfare plan may provide a vested benefit. *In re Unisys Corp. Retiree Medical Ben. ERISA Litigation*, 58 F.3d 896, 901 (3rd Cir. 1995); *Gable*, 35 F.3d at 855; *Alexander*, 967 F.2d at 95; *Wise*, 986 F.2d at 937. "An employer may 'waive[ ] its statutory right to modify or terminate benefits,' however, by voluntarily undertaking an obligation to provide vested, unalterable benefits." *Gable*, 35 F.3d at 855 (quoting *Wise*, 986 F.2d at 937); *see Boyer v. Douglas Components Corp.*, 986 F.2d 999, 1005 (6th Cir.1993). However, because the vesting of rights in a welfare plan constitutes an "extra-ERISA commitment, . . . courts may not lightly infer the existence of an agreement to vest employee welfare benefits." *Gable*, 35 F.3d at 855; *see John Morrell & Co.*, 37 F.3d at 1304; *Anderson v. Alpha Portland Indus., Inc.*, 836 F.2d 1512, 1517 (8th Cir.1988); *Howe v. Varity Corp.*, 896 F.2d 1107, 1110 (8th Cir.1990); *Wise*, 986 F.2d at 938.

"Contractual vesting is a narrow doctrine," and "Plaintiffs must assert strong prohibitory and granting language; mere silence is not of itself abrogation." *Wise*, 986 F.2d at 938. Extra-ERISA

commitments must be "found in the plan documents and stated in clear and express language." *Id.*

at 937; *see Alday*, 906 F.2d at 665 ("[A]ny retiree's right to lifetime medical benefits at a particular

cost can only be found if it is established under the terms of the ERISA-governed benefit plan

document"); *In re Unisys Corp. Retiree Medical Ben. ERISA Litigation*, 58 F.3d at 901. Plaintiffs

bear the burden of proving that the ERISA plan at issue contains vested benefits. *John Morrell &*

*Co.*, 37 F.3d at 1304; *Gable*, 35 F.3d at 855; *Howe*, 896 F.2d at 1109; *Anderson*, 836 F.2d at 1517;

*Local Union No. 150-A, United Food and Commercial Workers Int'l Union AFL-CIO v. Dubuque*

*Packing*, 756 F.2d 66, 69-70 (8th Cir.1985). Therefore, the court must examine the plan documents

to determine whether the employer intended to confer vested benefits. *Boyer*, 986 F.2d at 1002-04.

## B. The Plan Documents

ERISA requires that "[e]very employee benefit plan . . . be established and maintained

pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). The SPD is the statutorily established

means of informing participants of the terms of the plan and its benefits. *See* 29 U.S.C. §§ 1022(a)

& 1102; 29 C.F.R. § 2520.102-2. Here, nothing in the SPD (or the Adoption Agreement) indicates

that the board members' health insurance benefits would vest upon retirement or at any other time.

As explained above, the absence of any such "vesting" language is significant because the doctrine

of contractual vesting is narrow, and Plaintiffs have a heavy burden. *John Morrell & Co.*, 37 F.3d

at 1307; *see Wise*, 986 F.2d at 938.

Additionally, not only is there no express or implied "vesting" language, but, the SPD

specifically reserves FTC's and NTCA's right to modify and terminate the plan. (*See* Ex. 6 to

McCollum Dep. – 1998 NTCA SPD at 54.) This reservation does not include any limitations on the

ability to modify and/or terminate participation in the plan. Such an express reservation of the right

17

to modify or terminate the participants' benefits is plainly inconsistent with any alleged intent to vest those benefits. *See Gable*, 35 F.3d at 856; *Anderson*, 836 F.2d at 1519.

Nevertheless, Plaintiffs contend that the court must consider the "Mackey policy" when considering whether the "plan documents" vest lifetime health benefits to those trustees who reached eligibility before the plan was changed. Plaintiffs assert that the "Mackey policy" gave lifetime benefits to the trustees because it provided that the policy could not be "altered, amended or terminated" unless, *inter alia*, (1) the employees' benefits were increased, in which case the trustees' benefits were to be increased equally; (2) the employees benefits were decreased, in which case the trustees' benefits were to be decreased equally; or (3) the employees benefits were terminated, in which case the trustees' benefits were to terminate. (Def. Ex. 16 to McCollum Dep.) Plaintiffs contend that because none of these three scenarios occurred, FTC could not terminate their health benefits.

Although FTC contends that the court should not consider the "Mackey policy," it argues that even if the court accepts Plaintiffs' version of the facts as true, the "Mackey policy" does not grant lifetime benefits to the Plaintiffs for three reasons. First, FTC contends that eligibility to participate in retirement coverage does not equal vesting in lifetime retirement coverage. (Doc. #68 at 5-7.) Second, FTC contends that NTCA did not permit limitations and restrictions on the right to amend or terminate benefits. (*Id.* at 7-9.) Third, FTC argues that one of the three exceptions to coverage occurred. (*Id.* at 10-12.)

The first and second arguments fail. First, FTC contends that the "Mackey policy" provides "that four years of service merely allows a trustee to become eligible to participate in retirement coverage. Simply becoming eligible for certain coverage under a group health plan does not create

18

any 'vested' rights to benefits or coverage." (*Id.* at 5.)  Although those statements may be correct generally, the argument ignores the later language disallowing modification or termination to the policy except in the limited circumstances listed.  It is this language that grants a Board member, who becomes eligible by virtue of his or her four year of service, health insurance under a policy that cannot be altered, amended or terminated except in limited situations.

As to the second argument, FTC highlights the following clause in the "Mackey policy" involving implementation of the policy:

> This policy shall be implemented only to the extent permitted by NTCA as sponsor of the Triple AAA Plan and Single A Plan, and to the extent not permitted, the effect shall be as if such impermissible portion of this policy were not at any time approved by the Board.

(Ex. 16 to McCollum Dep.)  FTC then argues "[t]here is no evidence . . . that the 1998 Board ever sought or received permission from NTCA . . . to include any limitations in the Plan to prevent FTC from subsequently amending or terminating health coverage for retired trustees."  (Doc. #68 at 8.)  Plaintiffs respond that this argument is in the nature of an affirmative defense which was never raised by FTC until this point.  (Doc. # 72 at 11-12.)

FTC's argument misses the mark.  Plaintiff is not required to show that the Board sought permission to restrict the ability of FTC to amend or terminate the policy.  Although the SPD gives FTC the unrestricted right to modify and/or terminate the plan, nothing in the SPD prevents FTC from further restricting that unfettered right given to it by the SPD.  In other words, the SPD does not disallow extra-ERISA agreements such as the "Mackey policy."[14]

---

[14]/    The court notes that the "Mackey policy" most likely is invalid as to restricting the right of NTCA to amend or terminate the policy as the SPD expressly provides for the unfettered right of NTCA to amend and/or terminate the plan for any reason with prior notice.  As such, the restrictions in the "Mackey policy" are not "permitted" by NTCA.

FTC's third argument has merit and controls the outcome here.  FTC contends that when the Board of Trustees terminated the Plan with NTCA, it terminated active employee coverage altogether, thus permitting the Board to terminate trustee coverage as well under one of the exceptions listed in the "Mackey policy."   Plaintiffs reply that coverage was not terminated "altogether" because FTC continued to pay for coverage for employees (and Plaintiffs) under the Blue Cross plan and there was no interruption in service.   Plaintiffs contend that a change of providers does not constitute a "termination altogether."

Although Plaintiffs' argument is logical, a key element is missing.  By its express terms, the "Mackey policy" applies <u>only</u> to the Board's participation "in the NTCA's Group Health Program for health insurance and dental insurance." (Ex. 16 to McCollum dep.)  When the Board terminated its contract with NTCA in February 2004, it likewise terminated the "Mackey policy."  The "Mackey policy" simply does not apply to the Blue Cross Blue Shield plan.   If the "Mackey policy" was adopted as plaintiffs suggest, nothing follows.  Because the Blue Cross Plan gives FTC the discretion to amend the plans terms, and there is no extra-ERISA agreement providing otherwise, FTC had the ability to change the eligibility requirements for the trustees.  As such, FTC's motion for summary judgment is due to be granted.

## V.    <u>Conclusion</u>

For the reasons stated above, the court finds that no material issues of fact remain and that defendant FTC is entitled to judgment as a matter of law on both plaintiffs' complaints.  FTC's motion (Doc. #60) for summary judgment will be granted by separate order.

20

As to the foregoing it is SO ORDERED this the 25th day of January, 2010.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE